## Stash Estate

*Vincent X. Yakowicz*, Deputy Attorney General, and *Richard N. Spare* and *Robert Trucksess*, Special Assistant Attorneys General, for Commonwealth.

*O'Donnell, Weiss, Mattei & Suchoza*, and *A. Harry Levitan*, p. p., for respondents.

TAXIS, P. J., February 9, 1967.—This petition has been filed by the Commonwealth of Pennsylvania under section 721 of the Fiduciaries Act of April 18, 1949, P. L. 512. It seeks review of the adjudication filed February 28, 1964, in this estate, in which the balance for distribution was awarded in equal shares to Marie Stash and Andrew Stash, Jr., both of whom are residents of Czechoslovakia. The award was actually made to A. Harry Levitan, Esq., attorney-in-fact for distributees, for transmittal to them in installments, the forwarding of each succeeding installment to await acknowledgment to Mr. Levitan that the prior installment had been received. Before preparing its adjudication, the court heard testimony from David Cobb, Esq., an attorney from Washington, D. C., who is familiar with the problems surrounding the transmittal of funds to Czechoslovakia and other Communist countries, and from Mr. Hans Utsch of New York City, who is engaged in the business of transmitting funds, parcels, and other property to foreign countries, including Czechoslovakia. The Commonwealth was notified of the audit, but apparently through inadvertence notified its then Deputy Attorney General not to oppose the proposed distribution. Under such circumstances, the court concluded that the beneficiaries would receive the full use, enjoyment and control of their legacies, and decreed their distribution: Act of July 28, 1953, P. L. 674, sec. 2, 20 PS §1156; Fiduciaries Act of 1949, sec. 737, 20 PS §320.737.

The first installment due distributees has already been sent. It was transmitted by Mr. Levitan through the Philadelphia National Bank to the Zivnostenska Bank in Prague, Czechoslovakia. Mr. Levitan has attached to his brief the translation of a letter written by Andrew Stash, Jr., which acknowledges receipt of the funds and indicates that he intends to accumulate the money in order to build a house. His mother, Ma-

rie Stash, apparently cannot write, but his letter contains what purports to be her mark. There are no witnesses to the letter; nor is it supported by any oath or affidavit.

There remains due each of the distributees the sum of $2,668.34. It is the contention of the Commonwealth that further distribution should be withheld and that the funds should be paid over to the Commonwealth without escheat under the provisions of the statutes above cited. These authorize such action in general "Whenever it shall appear to the court, that . . . a beneficiary would not have the actual benefit, use, enjoyment or control. . . ." of the property or funds to be distributed. On the basis of the argument now presented by the Commonwealth, we conclude, somewhat reluctantly, that its position is correct and that further distribution of these funds should not be made at the present time.

On behalf of legatees, Mr. Levitan argues initially that review of the adjudication is not proper, since distribution has already occurred. We cannot agree with him, however, since the court retained control over the funds due Marie Stash and Andrew Stash, Jr., for the specific purpose of insuring that they receive the full use, benefit and enjoyment from them. Thus, for example, if the first installment had not been received and acknowledged by legatees, no one could question the power of the court to amend its decree of distribution as the situation required. Since a review of the case now leads us to conclude, as we did not at first, that the Stashes will not receive the full benefit and use of their legacies, we may likewise amend the decree to meet that contingency. There is, of course, no open question concerning the ownership of the funds (Cf. Wanson Estate, 419 Pa. 109); all that we are doing here is for the protection of the property rights of legatees in the hope that ultimately they may be able to receive and enjoy their funds.

With regard to the major issue, a great deal of material has been submitted to the court for its consideration, not all of which is legally admissible as evidence. In addition, a considerable number of cases involving the "Iron Curtain" problem have also been cited and reviewed. But since these situations must usually be dealt with on an ad hoc basis (Wanson Estate, supra), such authority is of little direct help.

Mr. Levitan argues earnestly that many of the problems which might otherwise have to be faced have been bypassed by proof of the actual receipt of the funds. There are, however, difficulties with this position. First, physical receipt, in some form, of the funds does not, ipso facto, demonstrate that the recipients will obtain their full use and enjoyment. Further, there is no positive proof of the genuineness of the letter from Andrew Stash, Jr., upon which Mr. Levitan relies, although it has a definite air of credibility. By far the greatest difficulty, however, is the lack of assurance that legatees will get full value for their funds and be able to use them as they wish. In order to receive a favorable rate of exchange into Czech funds, legatees must take the money in the form of "Tuzex crowns". These are actually credits to be used in so-called Tuzex stores, which are stores throughout Czechoslovakia established and operated by the government. A catalog of merchandise was submitted which listed a vast array of goods and supplies, but the evidence produced respecting the actual availability of these goods was indifferent and in some cases negative.

Mr. Cobb, aforesaid, testified at some length concerning the course of his representation of many foreign legatees, and other factors which led him to conclude that the Stashes would obtain full use, benefit and enjoyment of their legacies. Practically all of his conclusions are admittedly based on information received from others and are, therefore, hearsay, and

while we do not question Mr. Cobb's belief in the correctness of this information, we cannot under established precepts base our findings upon them.

Regarding the testimony of Mr. Utsch, while it is based for the most part upon personal knowledge, it relates only to the question of availability of merchandise in Tuzex stores (for which he is general agent in this country) and certain circumstances surrounding the conversion of dollars to Tuzex crowns and other Czech money. His testimony is not persuasive on the issue of use, benefit and enjoyment in the absence of knowledge on his part of the legal and political climate of Czechoslovakia.

Mr. Levitan has also submitted a copy of a memorandum prepared by him for use in the Estate of Elsie Bottman, Deceased, in the Orphans' Court of Philadelphia County. He therein sets forth many additional factors, legal and political, including information from government officials and others, in support of his position. This memorandum indeed demonstrates that these problems will never be free from some doubt, and it is possible that other courts would hold contrary to our present decision. However, this memorandum adds little specific evidence to the testimony of Mr. Cobb and Mr. Utsch to indicate that legatees in this case should receive their funds immediately.

The Commonwealth in its brief has asked us to take judicial notice that present safeguards do not assure that legatees will receive and be able to use their funds beneficially. Several cases of some years back are cited in support of this proposition, and while we wholly agree with these decisions, we do not now rely on their continuing correctness. Undoubtedly, Czechoslovakia is a totalitarian State with few or none of the legal safeguards for individual property rights which are so deeply ingrained in the law of this country; further, all of the instrumentalities, including the bank and

"Law Office No. 1", through which legatees must act, are adjuncts of the government, as are the Tuzex stores themselves. We can, however, conceive of allowing distribution in spite of all this, provided clear and admissible evidence were obtained that legatees would receive the fair value of their legacies in Czech funds and could use or not use them as they wished. Cf. Belemecich Estate, 411 Pa. 506.

We likewise note that the United States Treasury Department will not forward funds to Czechoslovakia or its citizens at this date, although not all "Iron Curtain" countries are similarly treated. While the State Department takes a somewhat more lenient position in other respects, its attitude is based upon broader political and economic considerations. At this writing, the Treasury Department has ruled that ". . . there is not a reasonable assurance that a payee in those areas (including Czechoslovakia) will actually receive checks or warrants drawn against the funds of the United States, . . . and be able to negotiate the same for full value": 31 C. F. R. §211.1 et seq.

Finally, we see parallels between the present matter and the Estate of Anthony Babusik, Dec'd, no. 1841 of 1963 in the Orphans' Court of Allegheny County. In that case, President Judge Boyle refused distribution of legacies to Czechoslovakia, in spite of testimony of Mr. Cobb similar to that presented in this case. The court ruled that Mr. Cobb's lack of personal contact with his clients and the fact that they were required to deal through a government operated law office, using power of attorney forms prepared by it, and also that legatees could receive a favorable rate of exchange only if they elect to take Tuzek credits, created so much doubt on the issue of beneficial receipt and use as to require the withholding of distribution.

Accordingly, the prayer of the petition is granted; the adjudication of February 28, 1964, is opened, and

it is ordered and decreed that A. Harry Levitan, Esq., attorney-in-fact for Marie Stash and Andrew Stash, Jr., pay over the balance of their legacies in his possession to the Commonwealth of Pennsylvania without escheat for custodial care.